2025 IL App (1st) 230146-U
No. 1-23-0146
Order filed March 28, 2025

Sixth Division

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | |
|---|---|
| *In re* THE MARRIAGE OF WASIF IBRAHIM, | ) |
| | ) |
|     Petitioner-Appellant, | ) |
| | ) |
| and | ) |
| | ) |
| AYNA MANTYYEVA, | ) |
| | ) Appeal from the Circuit Court |
|     Respondent-Appellee. | ) of Cook County. |
| _____ | ) |
| | ) |
| GOLDENTREE PROPERTIES, LLC & AYNA MANTYYEVA, | ) Nos. 19 D 7865 & 19 CH 12778 (consol.) |
| | ) |
|     Plaintiffs-Appellees, | ) |
| v. | ) The Honorable |
| | ) Geri Pinzur Rosenberg, |
| WASIF IBRAHIM, | ) Judge, presiding. |
| | ) |
|     Defendant-Appellant. | ) |
| | ) |
| v. | ) |
| | ) |
| ENEJAN MANTYYEVA, | ) |
| | ) |
|     Third-Party Defendant-Appellee. | |

JUSTICE HYMAN delivered the judgment of the court.
Presiding Justice Tailor and Justice Gamrath concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Affirming the trial court's judgment imputing income to husband in calculating child support, finding that wife's interests in two companies were her non-marital property, and ordering husband to repay money he misappropriated from one of the companies.

¶ 2    After Ayna Mantyyeva married Wasif Ibrahim in 2017, Ayna obtained an interest in two real estate management companies, Lux Management, LLC, which she co-owned with Wasif, and Goldentree Properties, LLC, which she owned jointly with three siblings. Ayna made the lone capital contribution to Lux and a 25% capital contribution to Goldentree using money her father sent her as a gift. Wasif had a 50% membership interest in Lux and made no capital contribution in Goldentree. Wasif filed for divorce in 2019. Goldentree and Anya, as one of the members of Lux, sued Wasif in the Chancery Division, claiming he misappropriated funds from both companies. Wasif filed a third-party complaint against Ayna's sister, Enejan Mantyyeva, individually and derivatively on behalf of Goldentree.

¶ 3    The trial court consolidated the marital dissolution and chancery case, dismissed one of Wasif's three claims, and granted a pre-trial motion *in limine* barring Wasif from introducing evidence about numerous business interests he failed to disclose in discovery. Later, the trial court granted a motion for a judgment on the remaining the third-party claims.

¶ 4    After trial, the court entered a judgment for dissolution imputing to Wasif $7,500 in income based on his testimony that he earned between $3,000 and $10,000 monthly and ordering him to pay various costs for the couple's child. As to the chancery claims, the court dissolved Lux by agreement and awarded Ayna all of Lux's post-liquidation funds and her 25% interest in Goldentree as non-marital property. The trial court also ordered Wasif to reimburse Goldentree $40,000 that he took without authority.

¶ 5    Wasif contends the trial court erred (i) granting the motion *in limine* prohibiting him from presenting evidence about his business interests, (ii) refusing to allow him to present his tax returns as evidence, (iii) imputing to him $7,500 in income when calculating his child support and expense obligations, (iv) awarding the proceeds of Lux and Goldentree to Ayna as non-marital property, (v) ordering him to repay Goldentree $40,000, and (vi) dismissing counts I and II of his third-party complaint.

¶ 6    We affirm. The trial court did not abuse its discretion by prohibiting Wasif from presenting evidence he failed to produce in discovery or imputing income to him when he failed to present credible evidence of his net income. Further, evidence showed that Ayna used non-marital property—monetary gifts from her father—to make capital contributions to both Lux and Goldentree. The evidence also showed Wasif was not a member of Goldentree, so dismissal of counts I and II of his third-party complaint was correct.

¶ 7                                  Background

¶ 8    Wasif and Ayna were married in 2017 and have one child. During the marriage, they started Lux Management LLC, a property management company, each having a 50% interest. Under Lux's operating agreement, net profits or losses were to be allocated annually "to the Members in proportion to each Member's relative capital interest." On liquidation, "a Member's interest shall be made in accordance with the positive capital account balances."

¶ 9    Ayna made the sole capital contribution to Lux of $515,000, which she claimed to be a gift from her father in Turkmenistan. He wired the funds to a company in Dubai, owned by his brother, who then wired the money to Carriage Trading, LLC in the United States, co-owned by his brother and Wasif. Lux used the money to purchase an apartment building.

¶ 10 In addition, Ayna acquired an ownership interest in Goldentree Properties, LLC along with three siblings, each making a capital contribution of $534,000 with funds given them by their father. Wasif made no capital contribution and was not listed as a member in the operating agreement. Wasif filed Goldentree's articles of organization, listing himself as registered agent. He and Enejan Mantyyeva, a sister of Ayna, were listed as the "manager[s] or member[s] having managerial authority." Goldentree bought three multi-unit apartment buildings. Wasif managed the properties in exchange for 8% of the gross monthly profits.

¶ 11 Without authority from Goldentree's members, Wasif withdrew $40,000 from the company's bank account, claiming it as his share of profits. Concerned about further withdrawals, Enejan transferred $206,000 from Goldentree's account into her personal account, removed Wasif from Goldentree's bank account, and filed articles of amendment removing Wasif as a member. She also returned the $206,000 to Goldentree.

¶ 12 Wasif filed for divorce in September 2019; Ayna counter-petitioned a month later. Ayna and Goldentree filed a two-count complaint in the Chancery Division, alleging Wasif violated Lux's operating agreement by transferring Lux's assets to a separate business he owns without her approval (count I) and took $40,000 from Goldentree without authorization from its members (count II). Both counts sought an accounting and return of misappropriated funds. Later, the parties agreed to dissolve Lux, and Ayna amended count I.

¶ 13 Wasif answered Ayna's chancery complaint and filed a three-count third-party complaint, individually and derivatively on behalf of Goldentree, against Enejan. Wasif contended he is a member of Goldentree based on the articles of organization that he filed. He alleged Enejan breached her fiduciary duties to him and the company by transferring $206,000 into her

personal account (count I). He also sought to void the articles of amendment Enejan filed (count II) and to enjoin Enejan for return of the $206,000 to Goldentree (count III).

¶ 14 Enejan moved to dismiss the third-party complaint under section 2-619.1 of the Code of Civil Procedure (735 ILCS 5/2-619.1 (West 2022)). She argued Wasif was not a member of Goldentree and thus lacked standing to bring a third-party complaint. The circuit court denied Enejan's motion as to Counts I and II, finding that questions of fact remained as to whether Wasif was a member. The court granted the motion to dismiss with prejudice count III, finding that Wasif had an adequate remedy at law for monetary damages.

¶ 15 The circuit court consolidated the dissolution of marriage and chancery cases.

¶ 16 After Wasif did not respond to written discovery requests, before trial, the Mantyyevas filed a motion *in limine*, barring Wasif from introducing evidence not produced in discovery and evidence about his undisclosed business interests. The trial court granted the motion.

¶ 17 Trial

¶ 18 The trial court held a three-day trial. Wasif testified that he is a software engineer and has created numerous businesses, some of which he did not disclose on his financial disclosure form or provide documentation in discovery because many were "shell companies" that did not have operating agreements or bank accounts. He explained that he frequently came up with business ideas and names and created LLCs, but did not pursue them further.

¶ 19 Wasif stated that his various businesses collectively produced between $3,000 and $12,000 a month, with an average monthly income of $6,000. He conceded his monthly income was hard to estimate because he reinvests "between $4 – and $4,500 a month, $5,000 a month" into his businesses instead of paying himself. When questioned about charges on his businesses' bank statements, Wasif claimed every charge was a "qualified business expense," which

included groceries, coffee, entertainment, and payments to his divorce lawyer. He also admitted paying the guardian *ad litem* from one of his business accounts. Though he claimed he reimbursed the company, he did not present supporting documentation. He acknowledged his financial affidavit contained numerous errors regarding his gross income and loan amounts.

¶ 20    Wasif said Ayna's father wire transferred the money via Dubai to Carriage Trading, LLC, a company jointly owned by Wasif and Ayna's father's brother. The money was then transferred to Lux's bank account and used to purchase an apartment building. Wasif said he viewed the money as a wedding gift to them both. He admitted having made a zero capital contribution; however, he suggested he contributed by "basically [doing] everything from A to Z," including finding, inspecting, and improving the property.

¶ 21    Wasif collected security deposits and rent from tenants. When asked to account for those funds, Wasif said he had produced an Excel spreadsheet in discovery listing what he had collected, but he did not introduce the spreadsheet at trial. Wasif had sole access to Lux's bank account and frequently used the company's debit card to pay for meals, gas, groceries, and entertainment. Wasif felt that all charges were "qualified business expenses" and not personal expenses but could not recall who made them or why. He charged many meals with his "partner," presumably Ayna as she co-owned Lux, but she denied knowledge of those charges.

¶ 22    Wasif testified he owned a 16.66% interest in Goldentree because that was what he and the Mantyyevas agreed to. He received a K-1 form from Goldentree in 2018, which he contends was evidence of his ownership interest in the company. (K-1 tax forms are generally provided to partners in a business and reflect annual earnings.)

¶ 23    Wasif attempted to admit his 2017, 2019, and 2020 tax returns as evidence, but the Mantyyevas objected on grounds that the returns were incomplete. Wasif's attorney argued

that the tax returns showed Ayna's social security number, which he wanted to use to refute her contention that she and her siblings allowed Wasif to participate in forming Goldentree because he had a social security number and the siblings did not. Ayna's attorney stipulated that Ayna had a social security number as of May 2018, and the trial court upheld the objection.

¶ 24    Enejan testified that she and her three siblings formed Goldentree using money received as gifts from their father. Enejan drafted Goldentree's operating agreement using a template, creating a member-managed LLC with each sibling holding a 25% membership interest. She acknowledged Wasif filed the articles of organization. Wasif told her only he could do it because he had a social security number and the siblings did not. She acknowledged the articles list Wasif as a "member" with "managerial authority," adding that as English is not her first language, she believed a "managing member" was a company employee, not an owner.

¶ 25    Enejan never discussed ownership with Wasif, nor did she and her siblings intend for him to hold an ownership interest. They verbally agreed to compensate Wasif with 8% of the monthly rentals for his managerial services at the end of the year. On the advice of Goldentree's accountant, the company issued a K-1 form to Wasif rather than Ayna in 2018, not because Wasif was a member, but rather Ayna did not yet have a social security number. After Ayna obtained one, Goldentree issued an amended K-1 in her name only and a 1099 form to Wasif for his services as manager. In 2019, Goldentree issued the K-1 form to Ayna.

¶ 26    Wasif withdrew $40,000 from Goldentree's operating account without authorization and later texted Enejan that it was his share of the company's profits. To prevent Wasif from taking more funds, Enejan transferred $206,000 from Goldentree's account to her own. She also removed Wasif's name from Goldentree's bank account and, with her siblings' approval, filed articles of amendment withdrawing him as a managing member. She said she wanted to

"terminate his involvement in any of our businesses *** and remove[ ] his name from everywhere possible." Enejan returned the $206,000 to Goldentree.

¶ 27    Ayna testified she earns about $700 monthly as a makeup artist. Combined with the $4,958 per month from Goldentree, she earned about $60,000 a year. She made a capital contribution to Lux of $515,000, using money her father gifted her. Ayna had no access to Lux's bank statements or funds. Wasif collected security deposits and rent from tenants, and Anya did not know what he did with the money. Ayna asked the court to dissolve Lux and distribute its assets according to the siblings' capital contributions.

¶ 28    The Mantyyevas' father, Orazdurdy, testified by evidence deposition. He said that he wanted to gift his four children their inheritances during his lifetime. He could not send money directly to them from Turkmenistan. So, he wired money to Carriage Trading, FZE in Dubai, which his brother owned, which then wired the money to Carriage Trading, LLC, in the United States, which Wasif jointly owned with Orazdurdy's brother. Carriage Trading acted solely as a conduit for the wire transfers and conducted no other business. Between 2017 and 2018, Orazdurdy wired his children about $4.15 million in gifts. He did not discuss the gifts with Wasif, nor intend for the money to be a gift to him.

¶ 29    At the close of the case involving the third-party complaint, the Mantyyevas' attorney moved for judgment on counts I and II under section 2-1110 of the Code of Civil Procedure (735 ILCS 5/2-1110 (West 2022)), arguing Wasif was not a member of Goldentree and cannot bring a claim of breach of fiduciary duty against Enejan. Further, even if Wasif was a member, he could be properly removed by a majority of the members.

¶ 30    After argument, the trial court granted the motion finding Wasif presented no evidence that Enejan breached her fiduciary duties or that Goldentree was injured when she withdrew

$206,000 from its bank account as Wasif had not refuted her testimony that she promptly returned the funds. The court also found the law permits a majority of the members of an LLC to remove a member, and Enejan and Ayna testified that they and their siblings voted to remove Wasif. The trial court denied Wasif's motion to reconsider.

¶ 31 After the parties submitted written closing arguments, the trial court entered a final judgment. The court ordered that Lux be dissolved by agreement of the parties and awarded all liquidation proceeds to Ayna under the terms of the operating agreement. The court further found that "given that 100% of the funds used to capitalize Lux are directly traceable to a non-marital source and given that 100% of the funds available upon Lux's dissolution are Ayna's, it necessarily follows that these post-liquidation funds, as well, remain non-marital under section 503(a)(1)." The court ordered Wasif provide an accounting for Lux, finding he "clearly treated Lux as his personal piggybank, all at [Ayna's] expense, and in contravention of his fiduciary duties to her and the company."

¶ 32 The trial court found Wasif failed to establish membership in Goldentree, as only the four Mantyyeva siblings were listed as members in the operating agreement. The court found Wasif received a K-1 in 2018 from Goldentree's accountant not because he was a member but because a social security number or tax ID was required, and Ayna had neither at that time. The court concluded that even if Wasif established membership, "which this court finds he did not, that membership ended *** when Enejan filed Articles of Amendment with the Illinois Secretary of State withdrawing Wasif from his purported role as managing member of Goldentree. At best," the court found, "Wasif's formal relationship to Goldentree was that of an employee, organizer, and registered agent." The court also ordered Wasif to reimburse Goldentree for the $40,000 he misappropriated.

¶ 33 The court found Ayna's capital contribution of $534,000 to Goldentree was non-marital property. "Inasmuch as these funds were never commingled with marital funds or in a marital account, the presumption of a gift between parent and child applies here, eliminating any doubt as to the non-marital nature of Ayna's interest." The "mere passage of gifted funds through the Carriage Trading LLC account as a conduit did not change their non-marital character."

¶ 34 The trial court found Ayna's monthly income was $6,543 based on her financial affidavit but that Wasif's unsubstantiated testimony "made it impossible to discern his actual income." Based on his "palpable credibility issues and lack of production of financial documents," the court found it reasonable to impute $7,500 in income to Wasif, which is midway between the amount he said he grossed per month, $3,000 and $12,000. The court ordered Wasif to pay Ayna $188 per month in child support and contribute to 50% of expenses. The court also ordered him to reimburse Ayna for half of preschool expenses.

¶ 35                                              Analysis

¶ 36                      Motion *in Limine* and Evidentiary Rulings

¶ 37 Wasif contends the trial court erred in barring him from testifying about businesses he owned due to his failure to disclose documents requested in discovery. The court's ruling will not be disturbed absent an abuse of that discretion. *Colella v. JMS Trucking Co. of Illinois*, 403 Ill. App. 3d 82, 92-93 (2010) (trial court maintains broad discretion in admitting evidence and ruling on motion *in limine*).

¶ 38 Wasif contends the counter-defendants failed to comply with the requirements of Illinois Supreme Court Rule 201(k) (eff. March 17, 2023). Rule 201(k) provides that discovery motions must include a statement that the parties tried but failed to resolve the issues. Wasif contends that the motion *in limine* lacked the required statement.

¶ 39        Wasif correctly notes that courts have held that under Rule 201(k) "any motion regarding discovery must include a statement that after personal consultation the parties were unable to resolve their differences." *In re Marriage of Lai*, 253 Ill. App. 3d 111, 115 (citing *Brandt v. John S. Tilley Ladders Co.*, 145 Ill. App. 3d 304, 306 (1986). For instance, in *Brandt*, which Wasif relies on, the appellate court reversed dismissal of plaintiff's complaint for failing to attend a deposition. The court noted that the motion to dismiss did not include a statement in compliance with Rule 201(k), nevertheless "the circuit court should have dismissed defendant's motion rather than plaintiff's complaint," dismissal being "appropriate only where there is a showing of wilful and deliberate disregard of court authority." *Brandt*, 145 Ill. App. 3d at 306.

¶ 40        Compliance with Rule 201(k) is not required, however, when a party has disregarded discovery orders issued by the circuit court. *Nedzvekas v. Fung*, 374 Ill. App. 3d 618, 622 (2007) (citing *Gayton v. Levi*, 146 Ill. App. 3d 142, 150 (1986)). As the *Gayton* court noted, Rule 201(k) seeks to "curtail undue delay in the administration of justice and to discourage motions of a routine nature." 87 Ill. 2d R. 201(k), Committee Comments. Those "goals are attained when the parties attempt to iron out discovery problems before seeking court intervention and sanctions." But a court's involvement in supervising discovery obviates the need for mandatory compliance with Rule 201(k). *Gayton*, 146 Ill. App. 3d at 150. "In fact, to require compliance with Rule 201(k) before a court could enforce its previous orders, entered in an attempt to expedite the truth seeking process, would permit the rule to be used to further delay, distract and harass one's opponent. Thus, the pettifoggery sought to be discouraged by a court's ability to impose appropriate sanctions under Rule 219 (103 Ill.2d R. 219) would be encouraged, rather than discouraged, by compliance with Rule 201(k) in such situations." *Id*.

¶ 41    The trial court set deadlines for discovery; Wasif ignored them. By violating the court's order Wasif demonstrated a deliberate and unwarranted disregard of the court's authority, rendering strict compliance with Rule 201(k) unnecessary. So, the absence of the Rule 201(k) language in the motion *in limine* is not grounds for reversing the trial court's order. And, based on the record before us, the trial court properly exercised its discretion in granting the motion *in limine*.

¶ 42    Moreover, even if the trial court erred, Wasif forfeited review by failing to make an offer of proof on what the excluded evidence would show. When a motion *in limine* is granted, an adequate offer of proof in the trial court preserves appellate review. *Snelson v. Kamm*, 204 Ill. 2d 1, 23 (citing *Sinclair v. Berlin*, 325 Ill. App. 3d 458, 471 (2001); *Colella*, 403 Ill. App. 3d at 93 ("adequate offer of proof informs trial court, opposing counsel, and reviewing court of nature and substance of excluded evidence"). Wasif's attorney made no adequate offer of proof. Thus, Wasif has waived the issue on appeal.

¶ 43    Wasif also contends the trial court erred by barring him from admitting his 2017, 2019, and 2020 tax returns into evidence. Wasif contends he "presumably" tendered his tax returns during discovery and suggests the Mantyyevas' had to bring the missing pages to his attention at a Rule 201(k) conference. As noted, we review a trial court's evidentiary rulings for an abuse of discretion. *In re Marriage of Baumgartner*, 384 Ill. App. 3d 39, 60 (2008). The trial court sustained the objections to admitting the tax returns because they were missing Schedule E, which shows business profits or losses. Wasif did not produce them in discovery, so the returns fell under the motion *in limine* order.

¶ 44    To repeat, a trial court's rulings on the admission of evidence and motions *in limine* are reviewed for an abuse of discretion. *Colella,* 403 Ill. App. 3d at 92-93. The trial court did not

abuse its discretion by refusing to admit into evidence tax documents Wasif failed to produce in discovery. To the extent Wasif asks us to "presume" he produced the full tax returns in discovery, he fails to point to anything in the record to support that contention. He has the burden of presenting a sufficiently complete record of the trial proceedings to support a claim of error. *Foutch v. O'Bryant*, 99 Ill.2d 389, 391-92 (1984). In its absence, we presume that the order conformed with the law and had a sufficient factual basis. *Id.*; *In re Marriage of Baniak*, 2011 IL App (1st) 092017, ¶ 30. Any doubts about the incompleteness will be resolved against the appellant. *Foutch*, 99 Ill. 2d at 391-92. Absent anything showing that Wasif produced the complete tax documents before trial, we presume the ruling conformed with the law.

¶ 45                                    Wasif's Imputed Income

¶ 46        Next, Wasif contends the trial court abused its discretion by imputing $7,500 in income to calculate his child support obligation. Wasif asserts the court failed to consider his legitimate business expenses.

¶ 47        Under the Illinois Marriage and Dissolution of Marriage Act, a trial court "determine[s] each parent's monthly net income" when setting child support. 750 ILCS 5/505(a)(1.5)(A) (West 2022). The statute defines net income as "gross income" minus enumerated standardized tax amounts and adjustments. 750 ILCS 5/505(a)(3)(B) (West 2022). Gross income, in turn, consists of "the total of all income for all sources," excluding certain benefits not relevant here. 50 ILCS 5/505(a)(3)(A) (West 2022). The findings on net income and the award of child support come within the trial court's sound discretion and will be affirmed absent an abuse of discretion. See *In re Marriage of Pratt*, 2014 IL App (1st) 130465, ¶ 22.

¶ 48        When a source of a parent's income emanates from the operation of a business, the statute considers the business's net income part of the parent's income. 750 ILCS 5/505(a)(3.1) (West

2022). "[N]et business income * * * means gross receipts minus ordinary and necessary expenses required to carry on the trade or business," excluding "any business expenses determined either judicially or administratively to be inappropriate or excessive." 750 ILCS 5/505(a)(3.1)(A) (West 2022); see also *In re Marriage of Bradley*, 2011 IL App (4th) 110392, ¶ 44. ("A trial court has broad discretion to determine whether a parent's claimed business losses are reasonable for purposes of calculating child support").

¶ 49        Setting child support begins with the statutory guidelines. Where a parent's "net income cannot be determined because of default or any other reason, the court shall order support in an amount considered reasonable in the particular case." 750 ILCS 5/505(a)(5) (West 2022). The court may need to determine a reasonable amount of support "in cases where there is no credible evidence of net income." *In re Parentage of I.I.*, 2016 IL App (1st) 160071, ¶ 57.

¶ 50        We find no abuse of discretion, given the finding that Wasif's testimony regarding his income lacked credibility. Wasif testified that he earned between $3,000 and $12,000 monthly, which the trial court relied on despite doubting its veracity. Wasif contends he testified extensively to "legitimate" business expenses, including for groceries, dance clubs, casinos, and comedy clubs that should have been deducted from his purported income. The trial court disagreed, finding Wasif had "palpable credibility issues" and failed to produce financial documents supporting their legitimacy. Thus, the trial court considered it impossible to accurately deduct business expenses from his income.

¶ 51        Courts routinely impute average income when a party's present income is uncertain. *In re Marriage of Sweet*, 316 Ill. App. 3d 101, 107 (2000). The trial court properly exercised its discretion by imputing $7,500 in income and calculating a reasonable amount of support in the absence of credible evidence of net income. *I.I.*, 2016 IL App (1st) 160071, ¶ 57.

¶ 52                                     Allocation of Lux

¶ 53        Section 503 of the Dissolution of Marriage Act states that " 'marital property' means all property, including debts and other obligations, acquired by either spouse after the marriage, except the following, which is known as 'non-marital property': (1) property acquired by gift, legacy or descent or property acquired in exchange for such property." 750 ILCS 5/503(a)(1) (West 2022). Courts presume property acquired during the marriage to be marital property unless overcome by clear and convincing evidence that the property falls within a statutory exception or was jointly acquired for estate or tax planning purposes. *Id*. § 503(b)(1). A transfer of property from a parent to a child is presumed a gift. *In re Marriage of Romano*, 2012 IL App (2d) 091339, ¶ 46. This presumption and the presumption that property acquired during the marriage is marital property "cancel each other out, and the trial court is free to determine the issue of whether the asset in question is marital or non-marital without resort to either presumption." *Id*. We will not reverse a classification as marital or non-marital unless the determination is against the manifest weight of the evidence. *Id*. ¶ 44.

¶ 54        Wasif argues that the trial court erred in allocating Lux to Ayna as non-marital property on account of (i) Lux was a joint venture he and Ayna started during their marriage and (ii) the evidence strongly suggests Ayna's father gifted the funds for Lux to them both. While Lux was acquired during the parties' marriage, the trial court found it a gift to Ayna alone. Nothing suggests that this finding was against the manifest weight of the evidence.

¶ 55        Wasif maintains that his father-in-law sent it shortly after their wedding. But aside from the timing, nothing in the record suggests a wedding gift. Ayna's father testified the money was a gift to Ayna as an advance on her inheritance. He expressly rejected the suggestion that

he intended to include Wasif. Ayna similarly testified the money was a gift. Wasif presented no testimony or evidence to the contrary.

¶ 56 Wasif suggests that the money from Ayna's father became marital property by passing through a Carriage Trading, LLC account in his name rather than deposited directly into an account in Anya's name. Placing non-marital funds into an account as a conduit does not transmute it into marital property. See *In re Heroy*, 385 Ill. App. 3d 640, 673 (2008) (nonmarital funds placed into joint account as a conduit to transfer money not deemed to transmuted into marital property).

¶ 57 Wasif contends that even if the money used to start Lux was a gift to Anya alone, it became marital property once she invested it in Lux. Not so. Article 9.2 of Lux's operating agreement provided that on liquidation, company assets would be allocated to members "in the amount of their respective adjusted Capital Account balances on the date of distribution." Paragraph 3.2 provides that distributions "in liquidation shall be made in accordance with the positive capital account balance." Wasif acknowledges he made no capital contribution. So, under the operating agreement, he gets nothing on liquidation. Lux was Ayna's non-marital property.

¶ 58 Goldentree

¶ 59 Wasif contends the trial court erred in (i) finding Anya's interest as non-marital property, (ii) finding he was not a member of the company, and (iii) requiring him to reimburse $40,000.

¶ 60 A trial court's findings will not be disturbed unless against the manifest weight of the evidence, meaning "the opposite conclusion is apparent or when findings appear to be unreasonable, arbitrary, or not based on evidence." *Bazydlo v. Volant*, 164 Ill.2d 207, 215 (1995). Unless a contrary finding is plainly apparent, we will not disturb factual findings based on conflicting testimony. *Buckner v. Causey*, 311 Ill.App.3d 139, 144 (1999).

¶ 61                                    *Marital Property*

¶ 62         In contending that Ayna's 25% interest in Goldentree is not marital property, Wasif reiterates his arguments about Anya's interest in Lux. We reject them for the same reasons. The evidence showed Ayna's father gifted only Ayna the money used to invest in Goldentree and used the Carriage Trading accounts solely as a conduit to transfer money to his children. Thus, again, Anya's interest was non-marital property.

¶ 63                           *Wasif Was Not a Member of Goldentree*

¶ 64         Wasif maintains the finding that he was not a Goldentree member was against the manifest weight of the evidence. Specifically, he asserts that he was a member of Goldentree based on (i) the articles of organization, which listed him as Goldentree's registered agent and as a "manager" or "member having the authority of a manager," (ii) his receipt of a K-1 form from Goldentree in 2018 for tax year 2017, and (iii) the articles of amendment Enejan filed with the Secretary of State listing him as a managing member. We do not agree.

¶ 65         Illinois' LLC Act provides that a company's operating agreement, not its articles of organization, dictates membership. 805 ILCS 180/10-1(a)(2)(A) (West 2022) ("A person becomes a member of a limited liability company *** after the formation of the company *** as provided in the operating agreement"). Filing articles of amendment, drafted and signed by Wasif without input from the Mantyyevas, did not make Wasif a member. The Mantyyevas testified that the operating agreement made the siblings the sole members of Goldentree, and that testimony was unimpeached.

¶ 66         Goldentree did issue a K-1 form in Wasif's name in 2018. The record shows Ayna did not obtain her social security number until "[l]ate May of 2018." Enejan testified that Goldentree's accountant told her he issued the K-1 to Wasif in light of Ayna not having a social security

number and the need to complete their 2017 taxes timely. Goldentree filed an amended tax return for year 2018, which provided a K-1 to Ayna instead of Wasif and issued K-1 forms in Ayna's (not Wasif's) name going forward.

¶ 67     As for the articles of amendment removing Wasif as a "managing member," Enejan testified she believed "managing member" was synonymous with a company employee, not an owner. She filed the amendment to terminate Wasif's involvement by removing "his name from everywhere possible," including the articles of organization. And, as the trial court found, the amendment mirrored the language Wasif used in the initial articles, actions wholly consistent with her goal of severing any relationship between Wasif and Goldentree.

¶ 68     Moreover, even if, as Wasif claims, he had a 16.66% interest in Goldentree, which the evidence does not support, the articles of amendment, which all four siblings agreed to, divested him of that interest. 805 ILCS 180/5-25(3); 805 ILCS 180/15-1 (West 2022).

¶ 69     *$40,000 Reimbursement of Goldentree*

¶ 70     Wasif argues that the trial court erred in ordering he reimburse Goldentree for the $40,000 he took from the company's bank account on the basis it compensated him for managing the company's apartment buildings. The parties dispute whether the issue became moot after Wasif filed for bankruptcy and the bankruptcy court discharged this debt. Regardless, Wasif failed to present evidence supporting his contentions that he had the authority to remove the money and that $40,000 reflected the amount Goldentree owed him for managing the apartment buildings—8% of gross rental income in 2018. We affirm the trial court.

¶ 71     *Third-Party Complaint*

¶ 72     Lastly, Wasif contends the trial court erred in finding in Enejan's favor on counts I and II of his third-party complaint under section 2-1110 of the Code (735 ILCS 5/2-1110 (West

2022). Count I alleged Enejan breached her fiduciary duties to Goldentree by withdrawing $206,000 from its account. Count II asked the trial court to declare the articles of amendment she filed void. Wasif could raise those claims only if a member of Goldentree. Having affirmed the trial court's finding that he was not, he lacks standing on both counts.

¶ 73         Affirmed.