2025 IL App (1st) 232326

No. 1-23-2326

Opinion filed June 17, 2025

Second Division

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the |
| CATHERINE XINOS, | ) | Circuit Court of |
| | ) | Cook County. |
| Petitioner-Appellee, | ) | |
| | ) | |
| and | ) | No. 20 D 5471 |
| | ) | |
| MICHAEL MARINO, | ) | Honorable |
| | ) | Naomi H. Schuster, |
| Respondent-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE VAN TINE delivered the judgment of the court, with opinion.
Justices Howse and Ellis concurred in the judgment and opinion.

**OPINION**

¶ 1    Following a bench trial, the trial court entered a judgment for dissolution of marriage and found that all of respondent Michael Marino's financial accounts were marital property. On appeal, Michael contends that the trial court erred in (1) granting a motion *in limine* filed by petitioner Catherine Xinos to bar Michael from presenting evidence that his financial accounts were nonmarital property as a sanction for his failure to disclose them as nonmarital property in

discovery and (2) classifying those accounts as marital property. For the following reasons, we affirm.

¶ 2                                                I. BACKGROUND

¶ 3     The parties were married in 2016 and had two children together, both of whom are minors. In 2020, Catherine filed a petition for dissolution of marriage, citing irreconcilable differences.

¶ 4     This appeal concerns whether Michael's financial accounts were marital or nonmarital property. Before a court can divide property in a divorce proceeding, the court must first characterize the property as marital or nonmarital. *In re Marriage of Gattone*, 317 Ill. App. 3d 346, 351 (2000). Property acquired before the marriage is nonmarital property "except as it relates to retirement plans that may have both marital and non-marital characteristics." 750 ILCS 5/503(a)(6) (West 2020). The court assigns nonmarital property to the spouse who owns it and does not divide nonmarital property between the spouses. *In re Marriage of Phillips*, 229 Ill. App. 3d 809, 817 (1992).

¶ 5                                           A. Written Discovery

¶ 6     During discovery, Catherine served interrogatories and requests to produce on Michael. On December 8, 2021, Michael responded to interrogatory 22 as follows:

> "22. List all non-marital property claimed by you, identifying each item of property as to the type of property, the date received, the basis on which you claim it is non-marital property, its location, and the present value of the property.
>
> Response: Investigation continues."

Michael never supplemented his response to interrogatory 22.

¶ 7    Interrogatories 6 and 11 sought information about Michael's financial accounts for the three years prior as well as his retirement plans. In response, Michael disclosed (1) a Bank of America checking account he opened in June 1994, (2) a Vanguard brokerage account he opened in May 1998, (3) a Fidelity brokerage account he opened in October 2001, (4) a Vanguard retirement account he opened in August 2010, and (5) a Fidelity 401(k) account he opened in May 2002. Michael also disclosed the balances of these accounts as of December 2021. In addition, Michael's response to interrogatory 25 stated that he would testify to "any non-marital assets" at trial.

¶ 8    On January 21, 2022, Michael responded to request to produce number 43 as follows:

> "43. NON-MARITAL PROPERTY: True and complete copies of all documents, records, reports, correspondence, memorandum, writings and alike in your possession and control referring to or relating to any and all non-marital property to which you claim title or an interest in, including but not limited to any documents supporting your claim of your nonmarital share of [apartments on East 95th Street in] Chicago, IL 60637.

> Response: Investigation continues as to non-marital property."

Michael did not produce any documents in response to this request.

¶ 9    Discovery closed on September 22, 2022. Thereafter, Michael's attorney withdrew, and Michael proceeded *pro se*. The court set a trial on financial matters for January 12, 2023.

¶ 10                          B. Trial and Dissolution Judgment

¶ 11    The record on appeal does not include reports of proceedings. We take the following facts from the bystander's report, the common law record, and the trial exhibits.

¶ 12    The day before trial, Catherine filed a motion *in limine* to bar Michael from presenting evidence of his nonmarital property pursuant to Illinois Supreme Court Rule 219(c) (eff. July 1, 2002). Catherine argued that Michael failed to supplement his response to interrogatory 22 and did not produce any documents regarding his nonmarital property; therefore, he should be prohibited from presenting evidence of his nonmarital property at trial. Michael did not file a written response to the motion, but he opposed it orally. The trial court granted Catherine's motion *in limine* and barred Michael from presenting testimony or evidence regarding his nonmarital property. Specifically, the court found that

> "[Michael] represented to the court that following his initial answer of 'Investigation continues' in response to the Notice to Produce and Matrimonial Interrogatories which inquired about non-marital assets, he did not subsequently tender documents related to alleged non-marital assets prior to the close of discovery on September 22, 2022, and therefore, did not produce any documentation evidencing the existence of or balance of accounts he allegedly owned prior to the marriage."

¶ 13    During trial, Michael attempted to testify "regarding the alleged balances of accounts titled in his name that were allegedly opened prior to the marriage." This testimony concerned the following 13 accounts:

> "a. Michael's Bank of America checking account [account number];
>
> b. Michael's Fidelity investment account [account number];
>
> c. Michael's Vanguard brokerage account [account number];
>
> d. Michael's Vanguard brokerage account [account number];
>
> e. Michael's Vanguard brokerage account [account number];

f. Michael's Vanguard brokerage account [account number];

g. Michael's Vanguard SEP IRA [account number];

h. Michael's Vanguard IRA [account number];

i. Michael's Vanguard Roth IRA [account number];

j. Michael's Vanguard Roth IRA [account number];

k. Michael's Fidelity Gibraltar 401(k) [account number];

l. Michael's Fidelity Northrop Grumman Savings Plan [account number]; and

m. Michael's Fidelity Middleby account [account number]."

Catherine objected to this testimony, based on the court's ruling on her motion *in limine*, and the court sustained her objection. During his adverse examination, Michael acknowledged that he "failed to tender documents evidencing alleged pre-marital balances at the time of the marriage for all accounts held in his name"; that is, documents regarding the accounts he opened prior to the marriage.

¶ 14    Nevertheless, Catherine introduced as exhibits statements from 11 of the 13 accounts listed above, the two exceptions being the Fidelity Northrop Grumman and Fidelity Middleby accounts. The record is not clear as to how she obtained those documents, given that Michael did not produce them in discovery. In any event, these exhibits reflect the balances of Michael's accounts as of 2021. They do not indicate when Michael opened the accounts. The statements also do not reflect contributions to the accounts, except for the Bank of America checking account, which reflects both direct deposits to and withdrawals from the account for daily expenses, such as groceries and utility bills. In addition, Michael introduced a document showing the balances of his Fidelity

Northrop Grumman and Fidelity Middleby accounts. This document does not reflect when Michael opened either account or any contributions to those accounts.

¶ 15    Following trial, the court entered a judgment for dissolution of marriage. Relevant here, the court found that:

"Michael failed to introduce any evidence whatsoever, either physical or through testimony, that the accounts held by Michael were non-marital. No documents were tendered in discovery related to [the] alleged[ly] non-marital nature of any of his account[s] or the balances of any account owned by him prior to the marriage. As a result, the court finds that Michael failed to overcome the marital property presumption and finds the accounts held in his name to be marital."

The court divided all marital accounts 75% to Michael and 25% to Catherine.

¶ 16                          C. Postjudgment Proceedings

¶ 17    Michael filed a *pro se* motion to reconsider the judgment, reopen discovery, and reopen the proofs. Michael claimed that he did not produce documents regarding his nonmarital financial accounts due to his attorneys' deficient representation of and poor communication with him. In addition, Michael claimed that

"[a]lthough [he] was unable to offer documentary evidence due to discovery sanctions, both parties offered consistent testimony during the trial that Michael and Catherine had nonmarital accounts prior to the marriage. Preliminary settlement discussions before the tr[ia]l between Michael and [Catherine's attorneys] acknowledged that there were pre-marital accounts in the petitioner and respondent['s] names ***. Both parties testified that the other party was never added to the non-marital accounts during the

time of marriage. Both parties testified that the other party never contributed to the non-marital accounts. None of the non-marital accounts had been transmuted during the time of marriage. New investments during the time of marriage were funded with non-marital funds. Both parties testified that during the time of marriage, marital accounts under the names of both the respondent and petitioner were never opened. These were uncontested facts. Therefore, Michael's non-marital accounts should have been awarded to him, just as was [*sic*] the findings to Catherine's non-marital accounts."

Michael requested that the trial court allow him to present "new evidence" regarding his nonmarital property.

¶ 18    In response, Catherine argued that Michael signed affidavits attesting that his written discovery responses were true, accurate, and complete to the best of his knowledge; therefore, he "chose not to disclose the alleged non-marital assets" during discovery.

¶ 19    The trial court denied Michael's motion to reconsider the judgment, finding that the "order is final and there is no just reason for delaying either enforcement or appeal or both."

¶ 20    Michael timely appealed.

¶ 21                                    II. ANALYSIS

¶ 22    On appeal, Michael challenges the trial court's ruling granting Catherine's motion *in limine* and its classification and division of the marital financial accounts.

¶ 23                                    A. Forfeiture

¶ 24    Catherine argues that Michael failed to preserve these issues for review because he did not make an offer of proof regarding the evidence of nonmarital property he would have presented at trial. There is no dispute that Michael did not make an offer of proof.

¶ 25    "When a motion *in limine* is granted, the key to saving for review an error in the exclusion of evidence is an adequate offer of proof in the trial court." *Snelson v. Kamm*, 204 Ill. 2d 1, 23 (2003). An offer of proof informs the trial court, opposing counsel, and the reviewing court of the nature of the evidence sought to be introduced. *Zickuhr v. Ericsson, Inc.*, 2011 IL App (1st) 103430, ¶ 63. A party "makes an adequate offer of proof if he informs the trial court, with particularity, of the substance of the witness' anticipated answer; an offer of proof that merely summarizes the witness' testimony in a conclusory manner is inadequate." *Snelson*, 204 Ill. 2d at 23. Failure to make an adequate offer of proof results in forfeiture of the issue on appeal. *Id.*

¶ 26    Michael's only response to Catherine's forfeiture argument is that he was not represented by counsel at trial. However, a *pro se* litigant, just like any represented party, must make an offer of proof regarding evidence he is barred from presenting. See *People v. Atchison*, 2023 IL App (5th) 220274-U, ¶ 25. Michael cites no authority to the contrary.

¶ 27    Michael's failure to make an offer of proof is also problematic as a practical matter. To prove that the 13 accounts at issue were nonmarital property, Michael had to show that he acquired the accounts before the marriage. See 750 ILCS 5/503(a)(6) (West 2020). The record does not indicate whether Michael could have made that showing with respect to any of the accounts and, if so, which ones. The bystander's report states only that Michael "*allegedly* opened [the accounts] prior to the marriage" (emphasis added), and Michael claims that he would have testified to that in general. But we do not know what evidence specifically he would have presented in support of that allegation. We also do not know whether any of the 5 premarital accounts Michael disclosed in his interrogatory responses are the same as the 13 accounts he attempted to claim as nonmarital property at trial. The former are identified by opening date but not account number, and the latter

are identified by account number but not opening date. Michael's petition for rehearing attempts to connect the two by comparing account balances. For example, Michael argues that the total balance of his four allegedly nonmarital Vanguard brokerage accounts is approximately equal to the balance of the Vanguard brokerage account he disclosed in response to interrogatory 6 and that he opened in May 1998. That may be, but Michael's "petition for rehearing cannot serve as a substitute for a proper offer of proof." See *Sheehan v. Board of Fire and Police Commissioners of City of Des Plaines*, 158 Ill. App. 3d 275, 297 (1987).

¶ 28    Furthermore, Michael may have needed to trace funds to show that the 13 accounts at issue did not *become* marital property. Even if a spouse acquires a financial account before marriage, that account can become marital property through contributions from marital property, such as the spouses' salaries. See *id.* (retirement plans "may have both marital and non-marital characteristics"); see also *In re Marriage of Kattner*, 2023 IL App (1st) 220803-U, ¶ 41 (401(k) accounts were nonmarital property before the marriage but became marital property through contributions from the spouses' salaries); *In re Marriage of Henke*, 313 Ill. App. 3d 159, 166-68 (2000) (checking account husband opened before the marriage became marital property because marital funds were deposited into and withdrawn from it during the marriage). To show that a financial account is nonmarital property, a party must trace the nonmarital source of the funds in the account by clear, convincing, and affirmative evidence. *In re Marriage of Didier*, 318 Ill. App. 3d 253, 265 (2000).

¶ 29    Because Michael did not make an offer of proof, we do not know whether he could have traced funds with respect to any of the 13 accounts at issue. The sources of funds in those accounts are unclear. Michael's opening brief claims, without citation to the record, that he "could have

testified that certain accounts were opened prior to the marriage and no deposits were made to those accounts." But he does not identify those accounts and the bystander's report is silent on that point. At a minimum, Michael would have had to trace funds with respect to the Bank of America checking account because he used that account to receive direct deposits and to pay for daily expenses, which may have converted the account into marital property. See *Henke*, 313 Ill. App. 3d at 166-68. Because Michael did not make an offer of proof, we cannot evaluate his claim that the trial court granting Catherine's motion *in limine* "prejudiced his property award in the dissolution judgment." We cannot tell whether he would have been able to establish that any of the 13 accounts at issue were nonmarital property, and, if so, which ones.

¶ 30     We acknowledge that "an offer of proof need not be made if it is clear that the trial court understood the nature and character of the evidence that would have been offered." *In re Estate of McDonald*, 2022 IL 126956, ¶ 86. But Michael does not cite that case or explain how it applies to this case. Accordingly, he has forfeited any such argument. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020); see also *Hayashi v. Illinois Department of Financial & Professional Regulation*, 2014 IL 116023, ¶ 43.

¶ 31     We do not find forfeiture lightly, but Michael has made virtually no effort to preserve this issue for review. He filed no response to the motion *in limine*, and the bystander's report is silent as to what he argued in opposition to the motion. He made no offer of proof regarding nonmarital property. His postjudgment motion raised this issue but framed it as a matter of deficient representation by his former counsel. And, on appeal, Michael makes no substantive response to Catherine's forfeiture argument. Accordingly, we find that Michael has forfeited issues related to his 13 allegedly nonmarital financial accounts. See *In re Marriage of Gabriel*, 2020 IL App (1st)

182710, ¶ 50 ("Because the record on appeal does not show that [the husband] made an offer of proof at any time, we must conclude that he has forfeited any challenge to the trial court's order granting [the wife's] motion *in limine*.").

¶ 32                               B. Motion *in Limine* Ruling

¶ 33     Even if we did not find forfeiture, we would affirm the trial court's ruling on the motion *in limine*. We review a trial court's ruling on a motion *in limine* and its imposition of Rule 219(c) sanctions for an abuse of discretion. *Passafiume v. Jurak*, 2024 IL 129761, ¶ 18; *Department of Transportation v. Dalzell*, 2018 IL App (2d) 160911, ¶ 83. A trial court abuses its discretion only where no reasonable person would take the view adopted by the court. *Dalzell*, 2018 IL App (2d) 160911, ¶ 83.

¶ 34     When a party unreasonably fails to comply with the supreme court rules or a trial court order governing discovery, the trial court may order "[t]hat a witness be barred from testifying concerning that issue." Ill. S. Ct. R. 219(c)(iv) (eff. July 1, 2002). That is what happened in this case. Michael was asked twice in written discovery what assets he claimed as nonmarital property. He identified nothing and produced nothing. The fact that Michael identified five accounts opened before the marriage in his interrogatory responses but, in the same interrogatory responses, did *not* claim those accounts as nonmarital property suggests a conscious choice on his part. Therefore, the trial court did not abuse its discretion in barring Michael from testifying to nonmarital property at trial.

¶ 35     *In re Marriage of Ibrahim*, 2025 IL App (1st) 230146-U, is persuasive authority (see Ill. S. Ct. R. 23(e)(1) (eff. Feb. 1, 2023)) and guides our reasoning. In that case, the trial court granted a wife's motion *in limine* to bar her husband from introducing evidence of certain business interests

because he did not disclose them in written discovery. *Ibrahim*, 2025 IL App (1st) 230146-U, ¶¶ 3, 16. On appeal, the husband challenged the trial court's ruling on the motion *in limine* ruling, and this court affirmed. *Id.* ¶ 6. We explained that the husband disregarded the trial court's discovery deadlines by failing to produce documentation of his business interests that were responsive to written discovery requests, so it was proper for the trial court to exclude that evidence at trial. *Id.* ¶¶ 43-44. We also found that the husband forfeited this issue because he failed to make an offer of proof as to what the excluded evidence would show. See *id.* ¶ 42 (citing *Snelson*, 204 Ill. 2d at 23). The case before us is essentially the same as *Ibrahim*, so we reach the same conclusion.

¶ 36    We reject Michael's complaint that Catherine did not attempt to resolve this issue during discovery, pursuant to Illinois Supreme Court Rule 201(k) (eff. Mar. 17, 2023). She had no reason to do so. From Catherine's point of view, Michael's written discovery responses meant that he was not claiming any assets as nonmarital property. Catherine was not obligated to force Michael to claim assets as nonmarital property. Rather, it was Michael's obligation to seasonably supplement his written discovery responses. See Ill. S. Ct. R. 213(i) (eff. Jan. 1, 2018); Ill. S. Ct. R. 214(d) (eff. July 1, 2018).

¶ 37    We also reject Michael's suggestion that he had no opportunity to respond to Catherine's motion *in limine* because she filed it the day before trial. The bystander's report indicates that he responded orally the following day. Also, there is nothing inherently improper about Catherine filing a motion *in limine* the day before trial. Parties often file and courts often rule on motions *in limine* shortly before or even during trial. See, *e.g.*, *Ramirez v. FCL Builders, Inc.*, 2014 IL App (1st) 123663, ¶ 14; *Hawkes v. Casino Queen, Inc.*, 336 Ill. App. 3d 994, 999 (2003). Accordingly, we find that the trial court did not abuse its discretion in granting the motion *in limine*.

¶ 38                    C. Classification of Michael's Accounts

¶ 39    Absent forfeiture, we would affirm the trial court's finding that the 13 accounts at issue were marital property. As Michael acknowledges in his opening brief, it was his burden to prove that those accounts were nonmarital property. See *In re Marriage of Stuhr*, 2016 IL App (1st) 152370, ¶ 51; *In re Marriage of Romano*, 2012 IL App (2d) 091339, ¶ 45. Michael presented no evidence on that issue due to the trial court's motion *in limine* ruling, which, as explained above, was not in error. Therefore, the trial court's finding that his financial accounts were marital property was not erroneous either. See *Romano*, 2012 IL App (2d) 091339, ¶ 44 (we reverse a trial court's classification of property only if it is against the manifest weight of the evidence).

¶ 40    Finally, Michael makes an underdeveloped argument regarding the division of marital property. As best we can tell, Michael's complaint is that the trial court awarded Catherine almost all her own financial accounts as nonmarital property, plus 25% of Michael's financial accounts as marital property. However, Michael does not appeal the trial court's finding that Catherine's financial accounts were, for the most part, her nonmarital property. The bystander's report indicates that Catherine introduced evidence establishing the nonmarital character of her own financial accounts. And, as explained above, the classification of Michael's financial accounts as marital property was not improper. Thus, the fact that the trial court divided those financial accounts between Michael and Catherine was not improper either. See 750 ILCS 5/503(d) (West 2020) (the trial court must divide marital property between the parties). Michael does not explain how the 75%-25% division of those accounts constituted an abuse of discretion. See *In re Marriage of Klose*, 2023 IL App (1st) 192253, ¶ 31 ("A circuit court's distribution of marital

property will not be reversed, absent a showing that the court abused its discretion."). We see no abuse of discretion in that division. Accordingly, we affirm the trial court's rulings.

¶ 41                               III. CONCLUSION

¶ 42    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 43    Affirmed.

---

### *In re Marriage of Xinos*, 2025 IL App (1st) 232326

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 20-D-5471; the Hon. Naomi H. Schuster, Judge, presiding. |
| **Attorneys for Appellant:** | Annette M. Fernholz, of Law Offices of Annette M. Fernholz, P.C., of Chicago, for appellant. |
| **Attorneys for Appellee:** | Bryan J. Wilson and Kirsten L. Meeder, of Kogut & Wilson, L.L.C., of Chicago, for appellee. |